UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Maria Perez,

    Petitioner,

    v.                                            Civil Action No. 2:20–cv–23-cr-jmc

Michael Touchette,
Theresa Stone,

    Respondents.

## REPORT AND RECOMMENDATION
(Doc. 4)

    Petitioner Maria Perez, an inmate in the custody of the Vermont Department of Corrections (DOC), initially filed this case in Chittenden County Superior Court on August 1, 2019. (Doc. 8.) In the Amended Complaint, Perez asserts that the DOC failed to protect her from abuse by one of its corrections officers, including an alleged retaliatory strip search, and failed to establish policies to prevent and investigate allegations of such abuse. (Doc. 30 at 7.) She contends that the DOC therefore failed to perform duties imposed upon it by several Vermont statutes. (*Id.*) On February 19, 2020, Respondents removed the case to this court, arguing that Perez's claims necessarily implicate federal questions under the First and Eighth Amendments. (Doc. 1 at 3–4; *see also* Doc. 6.) Perez has moved to remand. (Doc. 4.)

    For the reasons described below, I recommend Perez's Motion to Remand (Doc. 4) be GRANTED.

## Factual and Procedural Background

In the Amended Complaint, Perez alleges that she has been housed at the Chittenden Regional Correctional Facility since July 10, 2018.  (Doc. 30 at 1, ¶ 4.)  She states that, in August 2018, correctional officer J. McNight was working in the Alpha segregation unit where she was housed.  (*Id.* at 2, ¶¶ 6–7.)  Perez alleges that "McNight escorted [her] from her cell to the unit lockers so that [she] could retrieve her hygiene items."  (*Id.* ¶ 8.)  As they stood near the lockers, Perez states that she saw McNight remove a chocolate brownie from her pocket and Perez joked that she was jealous that McNight had baked goods.  (*Id.* ¶¶ 9–10.)  Perez asserts that McNight then gestured for her to step away from the lockers, instructed her to open her mouth, and placed a piece of brownie in her mouth.  (*Id.* ¶¶ 11–12.)  When Perez began to chew, she identified the taste of marijuana in the brownie.  (*Id.* ¶ 13.)  McNight then told Perez it would be "their secret."  (*Id.* ¶ 14.)

Shortly after the incident, Perez informed McNight "that she planned to report her for tricking Ms. Perez into consuming marijuana."  (*Id.* ¶ 17.)  Perez alleges that McNight offered her candy and commissary funds "in exchange for her silence," but that she refused the commissary funds.  (*Id.* at 3, ¶ 18.)  She claims that she accepted the candy, but did not eat it.  (*Id.*)  Perez also asserts that McNight shared personal details about her life and that she became "increasingly uncomfortable" around McNight.  (*Id.* ¶¶ 19–20.)  In early September 2018, she reported the marijuana incident and bribery to Superintendent Theresa Stone and gave Stone the candy she had received from McNight.  (*Id.* ¶¶ 21–22.)  Perez alleges

that Stone agreed to move her to a different housing unit and assured her that she would not have any further contact with McNight. (*Id.* ¶¶ 23–24.) She avers that she nevertheless remained housed in the Alpha unit for several days. (*Id.* ¶ 25.)

On or about September 6, 2018, Perez alleges that McNight approached her in her Alpha unit cell and "led her into the Booking area bathroom, where she closed and locked the door," and conducted a strip search. (*Id.* ¶¶ 26–28.) Perez alleges that, while she was completely naked, "McNight demanded that Ms. Perez tell her what she had reported to Superintendent Stone." (*Id.* at 4, ¶ 29.) When Perez began "yelling in the hopes that the Booking officer would come to the bathroom," McNight returned her clothes and concluded the strip search. (*Id.* ¶¶ 30–31.)

Perez states that she filed a series of grievances about the strip search, which were sustained by the Assistant Superintendent, affirmed by Superintendent Stone, and eventually forwarded to the Vermont Department of Human Resources and Vermont State Police for further investigation. (*Id.* at 4–5, ¶¶ 32–41.) On November 8, 2018, however, Superintendent Stone lifted the contact restriction between Perez and McNight, although Perez asserts that she was not notified that the restriction had been lifted. (*Id.* at 5, ¶ 42–43.) On or about November 14, 2018, a "Corrections Executive" again sustained Perez's grievance, stating that "[s]upervisory staff are aware of the situation to ensure this is prevented in the future." (*Id.* at 5–6, ¶ 45.) Nevertheless, Perez alleges that the DOC continues to place her in contact with McNight, including allowing her to conduct strip searches

of Perez, and refuses to establish a safety plan or policy to prevent and investigate similar staff misconduct. (*Id.* at 6, ¶ 51–53.)

On August 1, 2019, Perez filed a Complaint in Chittenden County Superior Court pursuant to Rule 75 of the Vermont Rules of Civil Procedure. (Doc. 8.) She filed an Amended Complaint on January 28, 2020, asserting claims under state law only. (Doc. 30.) Specifically, she claims that the DOC failed to perform the duties imposed on it by 28 V.S.A. §§ 102(c)(1), 102(c)(6), and 853(b) regarding the safety and treatment of persons in the DOC's custody. (*Id.* at 6–7.) Perez alleges that "the DOC's failures to (1) protect Ms. Perez from abuse by one of its officers, including the retaliatory strip search following Ms. Perez's report of the initial misconduct; and (2) establish policies for the prevention and investigation of allegations of such abuse amount to a 'virtual refusal to act or to perform a duty imposed by law,' and are reviewable under the writ of mandamus." (*Id.* at 7 (internal citation omitted).) She seeks declaratory and injunctive relief. (*Id.*)

Respondents removed to this court on February 19, 2020, arguing that the Amended Complaint "expressly alleges" retaliation in violation of the First Amendment and failure to protect under the Eighth Amendment. (Doc. 1 at 4; Doc. 6 at 2–3.) Respondents also argue that Perez cannot evade federal jurisdiction by artful pleading—specifically, that Perez's claims are necessarily federal claims under 42 U.S.C. § 1983 and that, to the extent she asserts state-law claims, they are dependent on first resolving federal questions regarding retaliation and failure to protect. (Doc. 6 at 3–6.)

4

On February 20, 2020, Perez filed a Motion to Remand. (Doc. 4.) She contends that there are no necessary federal questions underlying her state-law claims and that, although she could have brought First and Eighth Amendment claims, she did not. (*Id.* at 2; Doc. 38 at 2.) She states that she instead chose to bring her case under the laws of Vermont. (Doc. 38 at 2.) She argues the Court therefore lacks federal-question jurisdiction and must remand this action to state court. (*Id.*)

## Analysis

Under the federal removal statute, 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Thus, a civil action may only be removed to federal court if it "could have been brought, originally, in a federal district court." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005). "[F]ederal courts are courts of limited jurisdiction and may not decide cases over which they lack subject[-]matter jurisdiction." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000).

In light of the limited jurisdiction of federal courts and out of respect for the independence of state governments, "federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l*,

5

*Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, the defendant bears the burden of establishing that removal is proper." *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *see also Aurora Loan Servs, LLC v. Koellmer*, CIVIL ACTION NO.: 3:16-cv-00233 (VAB), 2016 WL 9818438, at *1 (D. Conn. Apr. 5, 2016) ("The party opposing the motion to remand bears the burden of showing that the requirements for removal are satisfied.").

Here, Respondents assert that the court has federal-question jurisdiction because Perez's claims "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ordinarily, "[t]he presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see Town of Southold v. Go Green Sanitation, Inc.*, 949 F. Supp. 2d 365, 370 (E.D.N.Y. 2013) ("[The court] look[s] only at the Plaintiff's original cause of action to ascertain whether it includes a federal question while ignoring any and all answers, defenses and counterclaims."). "Thus, a plaintiff may avoid federal jurisdiction by pleading only state[-]law claims, even where federal claims are also available, and even if there is a federal defense." *Fax Telecommunicaciones Inc. v. AT&T*, 138 F.3d 479, 486 (2d Cir. 1998) (citing *Caterpillar, Inc.*, 482 U.S. at 392–93).

6

Although the plaintiff is generally "master of the claim," *Caterpillar, Inc.*, 482 U.S. at 392, she cannot avoid federal jurisdiction by "artful pleading." *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 27 (2d Cir. 1988). Thus, a plaintiff cannot defeat removal "by framing in terms of state law a complaint the 'real nature of which is federal, regardless of plaintiff's characterization,' or 'by omitting to plead necessary federal questions in a complaint.'" *Id.* at 27–28 (alterations and citations omitted). The Second Circuit has clarified that "[t]hree situations exist in which a complaint that does not allege a federal cause of action may nonetheless 'aris[e] under' federal law for purposes of subject[-]matter jurisdiction:" first, where "Congress expressly provides, by statute, for removal of state[-]law claims"; second, where "the state[-]law claims are completely preempted by federal law"; and third, "in certain cases if the vindication of a state law right necessarily turns on a question of federal law." *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (internal citations omitted).

In this case, Respondents make three somewhat-overlapping arguments to support removal: (1) that First Amendment retaliation and Eighth Amendment failure-to-protect claims appear on the face of Perez's well-pleaded complaint (Doc. 6 at 2–3); (2) that 42 U.S.C. § 1983 completely preempts her state-law claim (*id.* at 3–5); and (3) that her state-law claim necessarily requires resolution of federal questions regarding retaliation and failure to protect (*id.* at 5–6).

I.      **Well-Pleaded Complaint**

Respondents first argue that Perez "expressly alleges" First and Eighth Amendment claims in her Amended Complaint and that "[t]he facts alleged throughout the complaint are consistent with such claims." (*Id.* at 2–3.) However, the Amended Complaint is clear in asserting only state-law claims. Specifically, Perez claims that, by failing to protect her from abuse and retaliation by one of their correctional officers and failing to establish policies to prevent and investigate such misconduct, Respondents "refus[ed] to act or to perform [the] dut[ies] imposed" by various Vermont statutes. (Doc. 30 at 6–7 (citing 28 V.S.A. § 1 (DOC shall "foster the[] human dignity" of persons in their custody); 28 V.S.A. § 102(c)(6) (DOC Commissioner must "maintain security, safety, and order at the correctional facilities"); 28 V.S.A. § 102(c)(1) (DOC Commissioner is charged with "mak[ing] rules and regulations for the governing and treatment of persons committed to the custody of the Commissioner, the administration of correctional facilities, and the regulation of employees under the jurisdiction of the Commissioner"); and 28 V.S.A. § 853(b) (prohibiting "cruel, inhuman, or corporal punishment" of DOC inmates)).)

Despite Respondents' suggestion to the contrary, Perez's use of the terms "retaliation" and "failure to protect" in her Amended Complaint does not automatically trigger federal-question jurisdiction or convert her state-law claims into a federal cause of action. *See Beary v. AT&T Servs., Inc.*, No. 2:14–cv–01153–APG–PAL, 2014 WL 4207014, at *3 (D. Nev. Aug. 25, 2014) ("[T]he term 'hostile work environment' is not a talisman that automatically invokes federal

8

discrimination law."); *Holloway v. S.C. Dep't of Corr.*, Civil Action No. 5:13–1473–MGL, 2013 WL 4693925, at *3 (D.S.C. Aug. 30, 2013) ("[Use] of words commonly associated with certain federal claims does not automatically mean that federal claims are intended when other aspects of a state[-]court pleading implicate only state[-]court claims."); *Pullen-Walker v. Roosevelt Univ.*, No. 05 C 7053, 2006 WL 862061, at *1–2 (N.D. Ill. Apr. 3, 2006) (use of language that defendants characterize as stating federal claims—e.g., "prior restraint on written expression," "double jeopardy," "ban on freedom of speech and right to assembly," and "den[ial] of procedural due process"—insufficient to convert state-law claim into federal claims (alteration in original)); *see also Ingraham v. Red Carpet Housing Corp.*, 1:17-CV-1076 (GLS/CFH), 2017 WL 5152343, at *4 (N.D.N.Y. Oct. 19, 2017) (mention of phrase "civil rights" insufficient to confer federal-question jurisdiction); *Rabinowitz v. Benson*, No. 92 Civ. 6026 (LMM), 1992 WL 309808, at *1 (S.D.N.Y. Oct. 9, 1992) (mere use of the word "federal" in plaintiff's complaint "not dispositive" of whether complaint states federal claim); *Park S. Neighborhood Corp. v. Vesta Mgmt. Corp.*, 80 F. Supp. 3d 192, 196 (D.D.C. 2015) (collecting cases).

Similarly, it is irrelevant that "[t]he facts alleged throughout the complaint are consistent with [federal constitutional] claims." (Doc. 6 at 2–3.) As "the master of [her] complaint," Perez is "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (internal quotation marks omitted). She chose not to assert federal claims under the First and Eighth Amendments, and the fact that she "*could*

9

have brought federal . . . claims based on the factual allegations contained in the complaint is not sufficient to convert the state[-]law claims into federal questions." *Glazer Capital Mgmt., LP v. Elec. Clearing House, Inc.*, 672 F. Supp. 2d 371, 377 (S.D.N.Y. 2009). Accordingly, a federal question is not presented on the face of Perez's Amended Complaint. Removal jurisdiction is therefore proper only if Respondents demonstrate that Perez's claims are "artfully pled." *Romano*, 609 F.3d at 519 (internal quotation marks omitted).

## II. Complete Preemption

"The artful-pleading doctrine includes within it the doctrine of complete preemption." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). In order to conclude that a claim is completely preempted, the court must find "that the preemptive force of [the federal law] is so powerful as to displace entirely any state cause of action" that comes within the scope of the federal law. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983); *see also Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (explaining that a claim is completely preempted if the court finds that "Congress desired not just to provide a federal defense to a state[-]law claim but also to replace the state[-]law claim with a federal[-]law claim"). "[W]hen a claim is completely preempted, the law governing the complaint is exclusively federal." *Id.* at 238–39 (internal quotation marks omitted). Thus, if a plaintiff "raises . . . a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a

10

federal claim and therefore 'arising under' federal law." *Sullivan*, 424 F.3d at 272 (quoting 28 U.S.C. § 1331).

In this case, although Respondents don't explicitly mention complete preemption, they argue that "[42 U.S.C. §] 1983 is 'so powerful as to displace entirely any state cause of action' for retaliation or failure to protect." (Doc. 6 at 4 (quoting *Franchise Tax Bd.*, 463 U.S. at 24).) They contend that Perez's allegations concern "precisely the sort of oppression that . . . section 1983 [is] intended to remedy" and that her Amended Complaint must therefore be construed as "aris[ing] under federal law." (*Id.* (alterations in original) (internal quotation marks omitted).) In other words, Respondents argue that § 1983 completely preempts Perez's state-law claims.

However, the complete preemption exception to the well-pleaded complaint rule is narrow. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998) (stating that the complete preemption doctrine "applies only in the very narrow range of cases where Congress has clearly manifested an intent to make a specific action within a particular area removable" (internal quotation marks omitted)); *Belmont v. JetBlue Airways Corp.*, 401 F. Supp. 3d 348, 356 (E.D.N.Y. 2019) ("The Supreme Court has only found three statutes to have the requisite extraordinary preemptive force to support complete preemption . . . ." (quoting *Sullivan*, 424 F.3d at 272)). Respondents offer no evidence or reasoned argument that Congress intended for § 1983 to "completely supplant all state law causes of action" concerning civil rights violations. *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 198 n.7 (S.D.N.Y. 2012)

(internal quotation marks omitted). To the contrary, other district courts considering the question have concluded that § 1983 does not completely preempt state-law claims. *See Smith v. Sutherland Bldg. Material Ctrs. L.P.*, CIVIL ACTION NO. 1:16-CV-00811, 2017 WL 814134, at *6 (W.D. La. Jan. 27, 2017) (citing *Redus v. Univ. of the Incarnate Word*, 61 F. Supp. 3d 668, 676–79 (W.D. Tex. 2014)); *Perez v. Fremont Police Dep't*, No. C–11–4198 EMC, 2011 WL 5872821, at *1 (N.D. Cal. Nov. 22, 2011); *Wolfe v. Tackett*, Civil Action No. 2:08-01114, 2009 WL 973442, at *8 (S.D. W. Va. Apr. 9, 2009); *Ruchka v. Husfelt*, No. 08cv0779, 2008 WL 2682686, at *8 (W.D. Pa. July 1, 2008) (citing *Baucom-Brown v. City of Phila.*, CIV. A. No. 89–6714, 1990 WL 4407, at *2 (E.D. Pa. Jan. 19, 1990)). As such, the complete preemption doctrine does not provide a basis for federal-question jurisdiction over Perez's claims.[1]

## III.  Necessary and Substantial Federal Question

Finally, Respondents argue that, even if Perez's Amended Complaint pleads a state-law claim, that claim necessarily requires resolution of federal questions regarding retaliation and failure to protect. (Doc. 6 at 5–6.) Although federal-question jurisdiction usually involves instances where "federal law creates the cause of action asserted," *Gunn v. Minton*, 568 U.S. 251, 257 (2013), "in certain cases

---

[1] Respondents also argue that mandamus relief is unavailable to Perez under Vermont law because § 1983 provides an adequate remedy at law. (Doc. 6 at 4.) However, it is not clear that mandamus relief is definitively unavailable to Perez, *see Vt. State Emps.' Ass'n v. Vt. Criminal Justice Training Council*, 167 Vt. 191, 195, 704 A.2d 769, 771 (1997) (explaining mandamus is available "to reach extreme abuses of discretion involving refusals to act or perform duties imposed by law"), nor is that question appropriate for this court to decide at this juncture. Moreover, the issue of whether Perez is able to pursue mandamus relief under Vermont law is irrelevant to the determination of whether § 1983 completely preempts her state-law claims.

12

federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Only a "special and small" number of cases will meet the criteria for this type of arising under jurisdiction. *Gunn*, 568 U.S. at 258 (internal quotation marks omitted); *see also NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014) ("[T]he Supreme Court has been sparing in recognizing state[-]law claims fitting this criterion.").

"To aid courts in identifying the 'extremely rare exceptions' comprising this group, the Supreme Court has fastened a four-part test." *Mihok v. Medtronic, Inc.*, 119 F. Supp. 3d 22, 27 (D. Conn. 2015) (quoting *Gunn*, 568 U.S. at 257). "[F]ederal jurisdiction over a state[-]law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. A district court will have federal-question jurisdiction over such claims only "[w]here all four of these requirements are met." *Id.* If even one prong is absent, there is no federal jurisdiction.

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315–16 (2d Cir. 2016). Thus, "state[-]law claims predicated on . . . violations of obligations rooted exclusively in federal law" necessarily raise federal issues. *Varga v. McGraw Hill Fin., Inc.*, 36 F. Supp. 3d 377, 382 (S.D.N.Y. 2014). By contrast, a complaint does not "necessarily raise" a

13

federal question when it "'assert[s] purely state-law causes of action' that do not require 'binding legal determinations of rights and liabilities under [federal law].'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S. Ct. 1562, 1576 (2016) (Thomas, J., concurring) (first alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 382 (1996))). As such, "the exercise of federal jurisdiction is inappropriate where no cause of action . . . necessarily stands or falls based on a particular interpretation or application of federal law." *In re The Reserve Fund Sec. & Derivative Litig.*, Nos. 09 MD.2011(PGG). 09 Civ. 782(PGG), 09 Civ. 3786(PGG), 2009 WL 3634085, at *4 (S.D.N.Y. Nov. 3, 2009) (internal quotation marks omitted).

Here, Perez solely alleges violations of Vermont law, without reference to federal law. (Doc. 30 at 6–7 (citing 28 V.S.A. § 1 (DOC shall "foster the[] human dignity" of persons in their custody); 28 V.S.A. § 102(c)(6) (DOC Commissioner must "maintain security, safety, and order at the correctional facilities"); 28 V.S.A. § 102(c)(1) (DOC Commissioner is charged with "mak[ing] rules and regulations for the governing and treatment of persons committed to the custody of the Commissioner, the administration of correctional facilities, and the regulation of employees under the jurisdiction of the Commissioner"); and 28 V.S.A. § 853(b) (prohibiting "cruel, inhuman, or corporal punishment" of DOC inmates)).) Nevertheless, Respondents' attempt to extrapolate federal issues from Perez's use of the terms "retaliation" and "failure to protect."

14

Specifically, Respondents argue that Perez's claims necessarily raise federal issues because in order to prevail, she must prove retaliation in violation of the First Amendment and failure to protect in violation of the Eighth Amendment. (Doc. 6 at 5.) In essence, Respondents contend that these federal questions are embedded within Perez's state-law claims. But as Perez points out, "under the writ of mandamus, she must establish that Defendant refused to perform the duties imposed by the various state laws cited in her amended complaint." (Doc. 4 at 2.) Perez could conceivably show that, by failing to prevent further contact of any kind with McNight, Respondents refused to maintain her safety (28 V.S.A. § 102(c)(6)), foster human dignity (28 V.S.A. § 1), and regulate DOC employees (28 V.S.A. § 102(c)(1)) in violation of Vermont law. Therefore, Perez could prevail without first establishing that McNight's alleged strip search constituted unlawful retaliation or assessing whether Respondents' refusal also amounted to a failure to protect in violation of the Eighth Amendment. Because Perez's state cause of action does not "necessarily stand[] or fall[] based on a particular application of federal law," *In re The Reserve Fund*, 2009 WL 3634085, at *4, it appears that no federal issues are "necessarily raised."

In its Opposition to Perez's Motion to Remand, Respondents argue that although "[Perez's] *theory* is that mandamus to enforce [s]tate law may provide a ground for relief," "[her] *claim* is that the [DOC] retaliated against her and failed to protect her," in violation of the First and Eighth Amendments. (Doc. 6 at 5.) Respondents cite *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir.2005), in

15

support of this argument. In *Broder*, the court stated that "[o]ne of the key characteristics of a mere 'theory,' as opposed to a distinct claim, is that a plaintiff may obtain the relief he seeks without prevailing on it." *Id.* at 195. Thus, the court concluded that the plaintiff was asserting a federal claim in addition to his state-law claim, in part because he sought a declaratory judgment that the defendant had violated a particular provision of federal law. *Id.*

By analogizing to *Broder*, Respondents apparently seek to draw this court's attention to Perez's requested relief. Like in *Broder*, Perez seeks a declaratory judgment "instructing Defendants that retaliatory strip searches are unlawful." (Doc. 30 at 7.) However, unlike in *Broder*, Perez's prayer for relief makes no specific mention of the First Amendment or any other federal law and, as explained above, mere use of the word "retaliatory" is not a talisman that automatically triggers federal-question jurisdiction. Accordingly, it is not clear that Perez's claims "necessarily raise" a federal issue. Because Respondents have failed to meet their burden on this prong, the exercise of federal-question jurisdiction is inappropriate. *Gunn*, 568 U.S. at 258.

Even assuming that federal questions were necessarily raised and actually disputed, federal jurisdiction would still be lacking under the substantiality prong. To demonstrate substantiality, "it is not enough that the federal issue be significant to the particular parties in the immediate suit." *Id.* at 260. Rather, "[t]he substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole." *Id.* Thus, an issue is likely to be substantial if it presents a

16

"pure issue of law . . . that could be settled once and for all and thereafter would govern numerous . . . [other] cases." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (internal quotation marks omitted). Conversely, an issue that is "fact-bound and situation-specific" is insufficient to establish substantiality. *Id.* at 701.

Even if Perez's claims raise federal issues regarding First Amendment retaliation or Eighth Amendment failure to protect, Respondents have not shown or even argued that resolution of those issues would be important "to the federal system as a whole." *Gunn*, 568 U.S. at 260. To the contrary, any discussion of those issues would involve "a fact-specific application" of well-settled First and Eighth Amendment jurisprudence to the facts of this case and would not have any broader implications reaching beyond these parties. *Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*, 557 F. App'x 87, 90 (2d Cir. 2014); *see also Vermont v. MPHJ Tech. Inv., LLC*, No. 2:13–CV–170, 2014 WL 1494009, at *9 (D. Vt. Apr. 15, 2014) (finding no substantiality where federal issue "involve[d] the application of existing [federal] law to the facts of this case"). Because Perez's right to relief does not necessarily depend on resolution of a substantial question of federal law, this case does not meet the criteria to join the "special and small" number of cases that confer this type of arising under jurisdiction. *Gunn*, 568 U.S. at 258.

## Conclusion

For these reasons, and in light of the federal courts' obligation to "construe the removal statute narrowly, resolving any doubts against removability," *Purdue*

17

*Pharma L.P.*, 704 F.3d at 213, I recommend Perez's Motion to Remand (Doc. 4) be GRANTED.

Dated at Burlington, in the District of Vermont, this 10th day of August 2020.

                                           /s/ John M. Conroy            .
                                           John M. Conroy
                                           United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

18